

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—



United States District Court
Southern District of Texas
ENTERED

FEB 1 2 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| HARRY J. CAVAZOS and | § | |
| MINERVA CAVAZOS | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-03-057 |
| | § | |
| LUIS MUNOZ, d/b/a/ MUNOZ | § | |
| ROOFING AND CONSTRUCTION | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This appeal concerns the validity of an original contractor's mechanic's lien to secure a debt for labor and material furnished in connection with renovations of existing improvements on a residential homestead. Debtors in a Chapter 13 bankruptcy case filed an adversary proceeding in the United States Bankruptcy Court for the Southern District of Texas seeking to avoid the lien. Although the contractor complied with the preconditions set forth in Article 16, Section 50(a)(5)(A)-(D) of the Texas Constitution and Section 53.254(a)-(c), (e) of the Property Code, the Bankruptcy Court denied the lien because the contractor had failed to file a lien affidavit pursuant to Section 53.052(b) of the Property Code. The contractor appealed. Upon careful consideration of this matter, this court holds that the contractor obtained an enforceable constitutional lien upon fulfillment of the requirements prescribed in Article 16, Section 50(a)(5)(A)-(D) of the Constitution and Section 53.254(a)-(c), (e) of the Property Code. Filing a lien affidavit

was not necessary in order to effectuate that lien. Accordingly, the Bankruptcy Court's ruling is reversed.

## I. STANDARD OF REVIEW

Findings of fact made by the Bankruptcy Court will not be set aside unless clearly erroneous, and conclusions of law reached by the Bankruptcy Court are reviewed *de novo* by this court. Matter of T.B. Westex Foods, Inc., 950 F.2d 1187, 1190 (5th Cir. 1992).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case involves an appeal from the Bankruptcy Court's order denying an original contractor's mechanic's lien on a residential homestead for renovation of existing improvements thereon. The Bankruptcy Court filed its Findings of Fact and Conclusions of Law. This court adopts the former, and the controlling facts are as follows: Appellant Luis Munoz, doing business as Munoz Roofing and Construction ("Munoz") prepared a proposal for improvements to Appellees Harry J. and Minerva Cavazos' ("the Cavazos") homestead on or about January 1, 1998. Upon acceptance of the proposal, the Cavazos applied for a mortgage to finance the construction work from the Rio Grande Mortgage Company in Harlingen, Texas; the mortgage was approved in September 1998. Munoz agreed to finance the work until its completion, at which time the mortgage company would fund the mortgage and reimburse Munoz for his work.

A Builder's and Mechanic's Lien Contract and Lien Note, which set forth the terms of the agreement, were prepared on March 5, 1999.[1] Munoz and the Cavazos signed the documents—and the signatures were properly acknowledged—at the office of the Rio

---

[1] There were actually two contracts and lien notes. A lien contract and lien note were originally prepared on or about September 12, 1998, but were not signed until February 12, 1999, and never recorded. These initial documents are not at issue in this case.

Grande Valley Abstract Company, Inc. on March 10, 1999, and the documents were

recorded on or about March 16, 1999. The contract contained the following capitalized,

boldfaced language: "**YOU MAY, WITHIN 3 BUSINESS DAYS AFTER CLOSING,**

**RESCIND THIS LOAN WITHOUT PENALTY OR CHARGE.**"

Munoz began performance of the work after recordation of the contract and

continued until September 1999, when construction was halted because the Cavazos

terminated the mortgage application and refused to pay Munoz for either the work

completed or remaining.  Munoz never filed a lien affidavit after the indebtedness

accrued.

On January 28, 2000, the Cavazos filed a petition for Chapter 13 relief and

subsequently filed an adversary proceeding to avoid Munoz's purported lien on their

property.  The Bankruptcy Court, relying upon CVN Group, Inc. v. Delgado, 47 S.W.3d

157 (Tex. App.—Austin 2001), rev'd on other grounds, 95 S.W.3d 234 (Tex. 2002),

concluded that Munoz needed to comply with the requisites set forth in Article 16,

Section 50(a)(5)(A)-(D) of the Texas Constitution and Sections 53.254(a)-(c) and

53.052(b) of the Texas Property Code in order to perfect his lien.[2]  The Bankruptcy Court

determined that Munoz satisfied the constitutional requirements and those of Section

53.254, but not Section 53.052(b) because he did not file a lien affidavit, as prescribed by

that provision.  The Court therefore held that Munoz failed to properly perfect his lien on

the Cavazos' homestead, entered judgment in favor of the Cavazos, and granted their

application to remove Munoz's lien on their property.

---

[2] Though the Bankruptcy Court determined that Munoz needed to satisfy only subsections (a), (b), and (c) of Section 53.254, Munoz also needed to comply with subsection (e) of that provision, which requires that the contract be recorded.  See TEX. PROP. CODE ANN. § 53.254(e). Munoz did so comply.

## III. DISCUSSION

This case presents this court with a single issue: whether an original contractor, who has complied with the requirements of Article 16, Section 50(a)(5)(A)-(D) of the Texas Constitution and Section 53.254(a)-(c), (e) of the Property Code, must also file a lien affidavit pursuant to Section 53.052(b) of the Code in order to perfect a mechanic's lien on a residential homestead for repayment of material and labor furnished for the renovations of existing improvements thereon.[3]  As mechanic's liens—referred to by many authorities as "mechanic's and materialman's liens"[4]—do not arise at common law, but rather are creatures of constitutional and statutory law, Lippencott v. York, 86 Tex. 276, 280, 24 S.W. 275, 276 (1893), the Texas Constitution and the mechanic's lien statutes of the State must be referenced to determine the rights of a claimant asserting such a lien.

Due to the numerous changes in the constitutional and statutory provisions pertaining to mechanics' liens and the myriad cases construing—and, at times, misconstruing—these provisions over the past 165 years, courts have not always been as consistent or as specific as they might have been in some of their observations and rulings. Consequently, the body of case law on such liens is not a model of clarity, and it is

---

[3] An "original contractor" is statutorily defined as "...a person contracting with an owner either directly or through the owner's agent." TEX. PROP. CODE ANN. § 53.001(7).

[4] *Among the many inconsistencies that exist among authorities in this area, there appears to be a*

doubtful that all the germane cases could be reconciled. This court, therefore, finds it beneficial to review that portion of Texas' lien history relevant to the issue at hand, with citation to a few pertinent authorities.

## A. HISTORY OF THE MECHANIC'S LIEN

Texas law recognizes two different mechanic's liens: the statutory mechanic's lien and the constitutional mechanic's lien. Apex Financial Corp. v. Brown, 7 S.W.3d 820, 830 (Tex. App.—Texarkana 1999, no writ) ("[a] statutory lien exists through compliance with the applicable statutes, while a constitutional lien arises by virtue of the Constitution without the aid of the statutes.") (citations omitted); see also Youngblood, Mechanics' and Materialmen's Liens in Texas, 26 SW. L.J. 665 (discussing, inter alia, the differences between the procedural steps an original contractor must follow to create each type of lien). Prior to the adoption of the Texas State Constitution of 1869, the sole basis of a mechanic's lien was statutory. Consequently, and perhaps surprisingly, the statutory mechanic's lien predated the constitutional lien, and its roots can be traced back to the Acts of the Republic.

## 1. STATUTES ENACTED DURING THE REPUBLIC OF TEXAS AND EARLY STATEHOOD

The mechanic's lien debuted in Texas in 1839, when the Congress of the Republic of Texas enacted "An Act For the relief of Master Builders and Mechanics of Texas." Act of Jan. 23, 1839, 3rd Cong., Repub. Tex. Laws, reprinted in 2 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822-1897, at 66 (Austin, Gammel Book Co. 1898). Pursuant to the Act, an original contractor who entered into a written contract for the construction of a building in an incorporated city or town was given a lien on the building and the land on which it was situated to secure payment for work and material furnished. 2 GAMMEL, supra at 66-67. The Act further required that the contract be filed within thirty days of

5

execution; otherwise, the lien was inoperative as to all persons without notice. 2
GAMMEL, supra at 67. When the "new" State of Texas adopted a Constitution in 1845,
the Act of 1839, along with the Act of 1844—which pertained to the rights of
subcontractors—became statutes of the State and continued to regulate the rights of those
claiming a mechanic's lien. TEX. CONST. of 1845, art. XIII, § 3 (providing that all laws
or parts thereof of the former Republic of Texas that were not averse to the new State
Constitution would remain viable).

   The adoption of the Constitution of 1869 gave birth to the constitutional mechanic's
lien, and it also instructed the Legislature to provide for its "speedy and efficient
enforcement."[5] TEX. CONST. of 1869, art. XII, § 47. However, this provision did not
reference liens on buildings erected or repaired and was judicially construed not to grant
original contractors a self-executing lien on real estate independent of the then existing
statute that required the original contractor to record the written contract to perfect the
lien. Campbell v. Fields, 35 Tex. 751, 1872 WL 7476, at 3 (1871) (interpreting the 1869
Constitution to confer a self-executing lien for only articles manufactured or repaired by
a claimant).

   At this point in the history of the mechanic's lien, an original contractor created a
valid lien upon buildings erected or repaired on either homestead or non-homestead
property in the same manner. Id. In other words, prior to the Act of 1871, which is
discussed below, the work performed and the labor furnished must have been contracted

---

[5] This provision provided that "[m]echanics and artisans of every class, shall have a lien upon the articles manufactured or repaired by them, for the value of their labor done thereon, or materials furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." TEX. CONST. of 1869, art. XII, § 47. Neither of the two previous constitutions of 1845 or 1866 made reference to such a lien.

for in writing and recorded within thirty days of execution. Id. Moreover, at this point in time, courts seemingly did not differentiate between the constitutional and statutory provisions and consequently read them as establishing only one lien. See e.g., Shields v. Morrow, 51 Tex. 393, 1879 WL 7684 (1879).

The Legislature responded to the Constitution's directive to provide for "the speedy and efficient enforcement" of the lien therein by passing "An Act to provide for and regulate mechanics, contractors, builders, and other liens in the State of Texas" in 1871. Act of November 17, 1871, 12th Leg., Adj. S., ch. 34, §§ 1-6, reprinted in 7 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822-1897, at 30 (Austin, Gammel Book Co. 1898). The Act of 1871 was cumulative of all the preceding Acts of the Congress of the Republic and the Act of 1848. Shields, 51 Tex. 393, 1879 WL 7684, at *3. This Act extended the mechanic's lien to performance of work pursuant to oral, as well as written, contracts.[6] 7 GAMMEL, supra at 30; see also Shields, 51 Tex. 393, 1879 WL 7684, at *3. The 1871 Act also introduced the lien affidavit to the statutory perfection scheme (at that time designated a "bill of particulars"), which was an itemized sworn statement of the original contractor's claim. 7 GAMMEL, supra at 30; ELDON L. YOUNGBLOOD, YOUNGBLOOD ON TEXAS MECHANICS' LIENS § 103.2(a)(2) (2nd ed. 1999). As an oral contract could not be recorded to perfect a lien, the bill of particulars (lien affidavit) was required to be filed in connection with liens claimed to arise under same in the exact manner provided for written contracts, and a copy was to be served upon the person that owed the debt. 7 GAMMEL, supra at 30; Ferguson v. Ashbell & Simpson, 53 Tex. 245,

---

[6] This Act also expanded the scope of the lien to include repairs to or construction of a building, i.e., any improvement, regardless whether located in the city or in a rural area. 7 GAMMEL, supra at 30.

1880 WL 9302, at *3-4 (1880); YOUNGBLOOD, supra § 103.2(a)(2). This instrument thus served as a substitute for the recorded written contract, where the agreement between the parties was verbal. See Id.

Consequently, with the enactment of the Act of 1871, an original contractor who endeavored to enforce a mechanic's lien on either homestead or non-homestead property had to perfect it by either recording the written contract or by recording the bill of particulars (lien affidavit) if the claimed debt arose pursuant to an oral contract. 7 GAMMEL, supra at 30; see also Ferguson, 53 Tex. 245, 1880 WL 9302, at *3-4. Both of these instruments had to be filed within six months from the time the claimed indebtedness became due. Id. When recorded, each had to be accompanied by a description of the lands, lots, houses, and improvements against which the lien was claimed, and the lien became perfected from the date the appropriate document was recorded. Id.

## 2. THE CONSTITUTION OF 1876

The Constitution adopted in February 1876—which is the present Constitution of the State—radically altered the mechanic's lien landscape. While Article 16, Section 37 of that document contained a mechanic's lien provision nearly identical to that of the prior Constitution, it also expressly created a constitutional mechanic's lien applicable to improvements on real estate.[7] TEX. CONST. of 1876, art. XVI, § 37. The Constitution also provided for homestead foreclosure protection in Article 16, Section 50, which today

---

[7] Article XVI, §37 provided that "[m]echanics, artisans, and materialmen of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." TEX. CONST. of 1876, art. XVI, § 37.

remains a fundamental law of Texas.[8]  Tex. Const. of 1876, art. XVI, § 50.  Pursuant to

this provision, a homestead could be subject to forced sale for, *inter alia*, payment of

debts "for work and material used in constructing improvements thereon…only when the

work and material are contracted for in writing, with the consent of the wife given in the

same manner as is required in making a sale and conveyance of the homestead…."[9]  Id. at

§ 50(a)(5).

    Responding to the command of Article 16, Section 37 of the Constitution to craft laws

for "the speedy and efficient enforcement" of the lien thereby created, the Legislature

promulgated the Act of 1876, which revised the procedures for perfecting a lien.[10]  Act of

August 7, 1876, 15th Leg., R.S., ch. 81, §§ 1-8, reprinted in 8 H.P.N. Gammel, THE

LAWS OF TEXAS 1822-1897, at 927 (Austin, Gammel Book Co. 1898).  With respect

to non-homestead property, the Act – in keeping with the dictates of the former Act –

required that the written contract be recorded, or, in the case of an oral contract, the lien

affidavit be recorded in order to perfect a lien.[11]  8 Gammel, supra at 927.  As to

---

[8] This provision was followed by Section 51, which defined what property constituted the homestead subject to the exemption specified in Section 50.  Tex. Const. of 1876, art. XVI, § 51.

[9] Though the Constitution failed to expressly require an acknowledgement of both the husband's and wife's signatures, this requirement was implicit in the admonition that the consent of the wife must be given in the same manner as was required in making a sale and conveyance of the homestead.  Tex. Const. of 1876, art. XVI, § 50(a)(5); Kalamazoo Nat. Bank v. Johnson, 5 Tex. Civ. App. 535, 538-39, 24 S.W. 350, 351-52 (Tex. Civ. App. 1893, no writ).  Acknowledgement of each signature had to be accomplished prior to the commencement of the work.  Panhandle Const. Co. v. Flesher, 87 S.W.2d 273, 275 (Tex. Civ. App.—Amarillo 1935, writ dism'd).

[10] The Act of 1876 was not cumulative of the previous Acts, but rather repealed all laws and parts

homestead property, however, the requisites for securing a lien were amended. Id. Though the Act included a recitation of the constitutional prerequisites necessary for enforcing such liens, the statute went further and required that the written contract set forth the terms of the contract;[12] that it be signed and acknowledged by the owner and spouse, if married, before the work or material were furnished; and that it be recorded in the county clerk's office in the county where the improvements were located or the land was situated.[13] Id.

The constitutional lien granted by Article 16, Section 37 of the 1876 Constitution was momentous for another reason: it was self-executing—i.e., it did not require compliance with the statutory requisites for perfection under the applicable mechanic's lien statutes— and thus a lien separate and apart from the statutory mechanic's lien established by the legislative acts. While today this principle is firmly embedded in Texas law, the self-executing feature of the lien did not immediately become the cornerstone of mechanic's lien jurisprudence, but rather developed over several years through several decisions of the Supreme Court of Texas.

---

[12] Only the essential conditions of the agreement needed to be included, not an itemization or detailed description of the work or material and not the plans or specifications. Harrop v. National Loan & Investment Co. of Detroit, Mich., 204 S.W. 878, 880 (Tex. Civ. App.—Fort Worth 1918, writ ref'd.).

[13] Section Four of the Act of 1876 is the predecessor statute to Section 53.254 of the Texas Property Code, the statute at issue in the present case. See 8 GAMMEL, supra at 927; TEX. PROP. CODE ANN. § 53.254. The first codification of the Civil Statutes of Texas in 1879 contained in Article 3174 the requisites set forth in the Act of 1876. Revised Statutes of Texas of 1879, 16th Leg. (Arts. 3164-3179). This provision was subsequently codified as Article 3304, Revised Civil Statutes of 1895; Article 5631, Revised Civil Statutes of 1911; Article 5460, Revised Civil Statutes of 1925; Section 53.059 of the Texas Property Code; and Section 53.254 of the Texas Property Code.

The Supreme Court of Texas first recognized that the Texas Constitution imposed the lien at the moment of the transaction and was thus independent of the lien statutes in Keating Implement and Mach. Co. v. Marshall Elec. Light & Power Co., 74 Tex. 605, 607-08, 12 S.W. 489, 490 (1889). In Keating, the implement company averred that the mandate contained in the Act of 1885 directing that contractors should have a lien upon compliance with the provisions therein meant that a mechanic's lien could not arise upon commencement of the work, but rather that the lien could come into existence only after it had been perfected by compliance with the statutorily prescribed perfection procedures. Id. The Keating Court held that position to be mistaken, reasoning that, because Article 16, Section 37 of the Constitution was the source of the lien referred to in the statutes, it arose at the moment of the transaction and was subject only to being regulated by the Legislature as to the time and method of its enforcement. Id.

Despite the holding in Keating, six years later the Supreme Court in Warner Elevator Mfg. Co. v. Maverick, although recognizing the independence of the constitutional lien, implied that the viability of said lien was conditional upon compliance with the lien perfection steps required by the controlling statutes. 88 Tex. 489, 492-94, 30 S.W. 437, 438-39 (1895). It was not until one year later in the landmark case of Strang v. Pray, 89 Tex. 525, 35 S.W. 1054 (1896), that the characteristics of the lien conferred by the Constitution were decisively established.

In Strang, the owner attempted to defeat the original contractor's claimed lien on a building, together with the lot upon which the building was situated, on the basis that the statutes required either the contract for the erection of the building to be recorded or a bill of particulars (lien affidavit) filed, neither of which had been done. Id. at 1055. The

11

Court held that as between the owner of the property and the original contractor the lien created by the Constitution and arising upon the performance of the work was self-executing, and the requirements imposed by the Legislature to perfect the lien did not affect the claimant's rights as to its enforcement.[14] Id. at 1056. The Court further concluded that compliance with the statutory requisites was necessary only to secure the original contractor's rights as against third parties, i.e., intervening purchasers or encumbrancers who became so in good faith, for value, and without notice of the lien.[15] Id.

Accordingly, the Strang Court recognized the existence of two types of liens: the constitutional lien, which existed independent of and apart from any legislative acts and the statutory lien established by the state legislature. Id. The constitutional lien—unlike the statutory lien—was self-executing as between the original contractor and the owner and not dependent upon compliance with the requirement that a bill of particulars (lien affidavit) be filed. Id. However, though the constitutional lien was self-executing, it could not be enforced against a bona fide purchaser or encumbrancer that had no notice of the lien without satisfying the statutory perfection requirements. Id. An original contractor could only enforce a constitutional lien against the owner of the property, i.e., the person with whom he had directly contracted and with whom he was in privity. Id.

---

[14] Only original contractors, not subcontractors, benefited from the self-executing feature of the lien created by the Constitution. In re A&M Operating Co., Inc., 182 B.R. 997, 1001 (E.D. Tex. 1995); Horan v. Frank, 51 Tex. 401, 1879 WL 7685, at *3 (1879).

[15] There are two types of permitted notice: actual and constructive. Detering Co. v. Green, 989 S.W.2d 479, 481 (Tex. App.—Houston [1st Dist] 1999, pet. denied). Actual notice of a lien can be inferred when a purchaser has the "means of knowledge and a reasonably diligent inquiry would have disclosed the full truth." Apex Financial Corp., 7 S.W.3d at 831. A contractor can give constructive notice by timely filing a statutory lien affidavit in the public record. Wood, 420 S.W.2d at 429.

Thus, in order to perfect a statutory lien that was effective against third parties, an

original contractor had to file a lien affidavit in the manner set forth in the statutes. Id.

The principles articulated in Strang were affirmed and more extensively explained in

Farmers' & Mechanics' Nat. Bank v. Taylor, 91 Tex. 78, 40 S.W. 876 (Tex. Civ. App.—

1897), aff'd, 91 Tex. 78, 40 S.W. 966 (1897). The Court in Farmers' & Mechanics' Nat.

Bank construed Strang as follows:

> "[w]e think that the language of the learned judge who delivered the
> opinion in [Strang]…means that the filing and recording of the contract or
> account, as provided in the statute, is not necessary in any case arising
> between the original contractor and the owner; that it is only necessary to
> fix, secure, and protect the lien as against subsequent purchasers and
> mortgagees and lien holders who become so in good faith, for a valuable
> consideration, without notice of such a claim and lien, and that this is all
> that the legislature meant by [Article 3295, Revised Civil Statute of Texas,
> 1895] …. It could not prescribe conditions of forfeiture, nor conditions
> upon which the lien should arise or take effect. The constitution covered
> that part of the subject fully by declaring that the contractor who furnished
> the material or did the work should have the lien. No record within four
> months, or any other time, is required to give the lien. The legislature is
> commanded simply to provide by statute for the 'speedy and efficient
> enforcement' of such lien. The provisions of the statute requiring the
> claim to be recorded were intended to protect mechanics, artisans, and
> material men as against subsequent purchasers, mortgagees, and lien
> holders in good faith without notice, by furnishing constructive notice to
> the world of the existence of the lien, in designating where such matters
> can be found recorded, and thus making it the duty of persons dealing with
> the property to examine such records before advancing money on the
> property.[16]

Id. at 879-80 (emphasis added).

Consequently, the adoption of the 1876 Constitution and the concomitant passage of

the Act of 1876 created material differences in the necessary steps for a constitutional

---

[16] Article 3295, Revised Civil Statute of Texas, 1895, the provision the Court in Farmers' &
Mechanics' Nat. Bank addressed, is the predecessor statute to Section 53.052, the statute at issue
in the present case. See TEX. PROP. CODE ANN. § 53.052.

lien to arise on non-homestead and homestead property. See TEX. CONST. of 1876, art.

XVI, §§ 37, 50; 8 GAMMEL, supra at 927. A constitutional lien arose on non-homestead

property upon commencement of the work and was independent of and existed apart

from the perfection requirements contained in the mechanic's lien statutes. TEX. CONST.

of 1876, art. XVI, § 37; Strang, 35 S.W. at 1056; Farmers' & Mechanics' Nat. Bank, 40

S.W. at 880. For both non-homestead and homestead property, a contract with the owner

to perform lienable work or to deliver material for an improvement to real estate was an

essential prerequisite for a valid lien under the Constitution, Article 16, Section 37.

YOUNGBLOOD, supra § 501.1. Regarding non-homestead property, though a contract

between the original contractor and the owner of the property was required, it could be

written or oral. 8 GAMMEL, supra at 927; Ball v. Davis, 118 Tex. 534, 539, 18 S.W.2d

1063, 1064 (1929); Ferguson, 53 Tex. 245, 1880 WL 9302, at *3-4. On such property, a

contract could also be express or implied. Tenison v. Hagendorn, 155 S.W. 690, 693-94

(Tex. Civ. App.—Dallas 1913) (finding a contract was implied where the owner knew the

work was for his benefit, suggested modifications, and supervised the work).

On homestead property, a constitutional lien arose upon commencement of the work

and was independent of and existed apart from the perfection requirements contained in

the mechanic's lien statutes if the requisites of Article 16, Section 50 of the Constitution

and Section Four of the Act of 1876 were followed. TEX. CONST. of 1876, art. XVI, §

50; 8 GAMMEL, supra at 927. Thus, a lien could not attach to a homestead unless the

work was performed pursuant to a written contract that set forth the terms of the

agreement; that was signed and acknowledged by the owner and spouse, if married,

before the labor was performed or the material furnished; and that was recorded in the county clerk's office.  Id.

Since a constitutional lien was unenforceable against both non-homestead and homestead property as to intervening purchasers or encumbrancers who became so in good faith, for value, and without notice of the lien, an original contractor needed to perfect a statutory mechanic's lien to protect all of the claimant's rights arising under the lien.  Strang, 35 S.W. at 1056; Farmers' & Mechanics' Nat. Bank, 40 S.W. at 880. Perfection was achieved by either recording the written contract or, in the case of an oral contract for work performed on non-homestead property, the lien affidavit, in the exact manner and within the time constraints prescribed by the applicable statutory provisions. 8 GAMMEL, supra at 927; Strang, 35 S.W. at 1056; Farmers' & Mechanics' Nat. Bank, 40 S.W. at 880.

## 3. SUBSEQUENT SUBSTANTIVE DEVELOPMENTS IN MECHANIC'S LIEN JURISPRUDENCE

The Act of 1885 modified the time restraints for recordation of an original contractor's claim.  Act of March 28, 1885, 19th Leg., R.S. ch. 66, 1885 Tex. Gen. Laws 683, reprinted in 9 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822-1897, at 683 (Austin, Gammel Book Co. 1898).  Rather than require an original contractor's written contract to be filed within six months after the indebtedness accrued (or a lien affidavit, if the work was performed under an oral contract), the Act mandated that the appropriate instrument be filed within four months after the indebtedness accrued.  9 GAMMEL, supra at 683-84.

The mechanic's lien laws—as amended through 1909—were recodified in 1911 at Tex. Civ. Stat., arts. 5621-5639, with the aforementioned statutory requirements for securing a constitutional lien upon a homestead contained in Article 5631.  Revised

15

Statutes of Texas of 1911, 32nd Leg., (Arts. 5621-5639) 1188-93, 1190-91.  These

mechanic's lien statutes were again reorganized by the Act of 1925 into Arts. 5452-5472.

Revised Statutes of Texas of 1925, 39th Leg. (Arts. 5452-5472) 1537-43. The requisites

for perfecting a lien upon a homestead were inserted at Article 5460.  Id. at 1540-41.

     The Act of 1961, known as the Hardeman Act, revised Article 5452 *et seq.* and

ushered in sweeping changes in the manner of perfecting a claimant's statutory

mechanic's lien within the statutory scheme.[17]  Ch. 382, § 1, 57th Leg., 1961 Tex. Gen.

Laws 863 (1961).  The Act eliminated the requirement that a claimant's contract—if

written—be recorded in the manner set forth in the statutes and instead rendered

recordation of the lien affidavit the primary action of the statutory perfection procedures

required of all original contractors, whether the contract was oral or written.[18]  § 2, 1961

Tex. Gen. Laws 864-65.  An original contractor needed to file the affidavit not later than

120 days after the indebtedness accrued.  Id.

     Tex. Rev. Civ. Stat. art. 5460, the provision pertaining to liens on homesteads,

however, was not amended and thus still preserved the long-standing requirements of

recording the written, signed, and acknowledged contract that had to be executed prior to

the commencement of the work that an original contractor needed to fulfill in order to

possess a valid constitutional lien that was enforceable against the owner of the property.

Ch. 382, 1961 Tex. Gen. Laws 863; see e.g., In re Daves, 770 F.2d 1363, 1366-67 (5th

Cir. 1985) (holding that a valid lien could not be created on a homestead unless there was

---

[17] The Act amended nine articles (former Arts. 5452-56, 5463, 5467-69); repealed four articles (former Arts. 5457, 5461, 5462, and 5465 (Rev. Stat. 1925)); and added one new article (5467d, providing for statutory payment bonds).  § 1, 1961 Tex. Gen. Laws 863.

[18] This requirement—which applied to subcontractors, as well—was codified at Tex. Rev. Civ. Stat. 5453.  § 2, 1961 Tex. Gen. Laws 864-65.

strict compliance with Article 16, § 50 of the Constitution and Tex. Rev. Civ. Stat. art

5460); Herrington v. Luce, 491 S.W.2d 478, 480-81 (Tex. Civ. App.—Tyler 1973, no

writ) (observing that an original contractor's self-executing constitutional lien arose from

his contract for homestead improvements upon satisfying Article 16, Section 50 and

Article 5460).  Consequently, as to homestead property, the Legislature retained the

recordation of the written contract requisite pertinent to the creation of a constitutional

lien that an original contractor could enforce against the owner of the property and

required the filing of a lien affidavit in the exact manner prescribed in the statutes—in

addition to fulfilling the constitutional and statutory homestead formalities contained in

Article 16, Section 50 of the Constitution and Tex. Rev. Civ. Stat. art. 5460—if the

contractor needed to perfect a statutory lien that could be enforced against third parties.

TEX. CONST. of 1876, art. XVI, § 50; § 2, 1961 Tex. Gen. Laws 864-65; Article 5460,

Revised Civil Statutes of Texas, 1925.

    The Act of 1983, in pertinent part, recodified the entire body of mechanic's lien

statutes as Chapter 53 of the Property Code (formerly Tex. Rev. Civ. Stat. 1925 art. 5452

*et seq.*).  Act of June 19, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3535

(1983).  Though numerous statutes were substantially reworded and reorganized, the

Texas Legislature expressly declared that this recodification was a non-substantive

revision.  § 7, 1983 Tex. Gen. Laws 3730.  The provisions applicable to claims on

homestead property were codified at Section 53.059 (formerly Tex. Rev. Civ. Stat. 1925

art. 5460).  § 1, 1983 Tex. Gen. Laws 3543.  Section 53.052 (formerly Tex. Rev. Civ.

Stat. Ann. art. 5453) carried over the lien affidavit filing deadlines required in order to

perfect a statutory mechanic's lien.  § 1, 1983 Tex. Gen. Laws 3538.

17

## 4. RECENT SUBSTANTIVE DEVELOPMENTS IN MECHANIC'S LIEN JURISPRUDENCE

With the Act of 1997, the Texas Legislature modified Chapter 53 of the Property Code by adding a new subchapter—Subchapter K—that dictated the necessary steps for statutorily perfecting a lien applicable only to "residential construction projects," as that term was defined in Section 53.001 of the Property Code.[19]  Act of May 31, 1997, 75th Leg., ch. 526, § 23, 1997 Tex. Gen. Laws 1887.  Section 53.059, which applied to all homestead property, was repealed as to claims arising under contracts executed on or after September 1, 1997, and reinserted into the newly created Subchapter K at Section 53.254.  §§ 23-25, 1997 Tex. Gen. Laws 1887-88, 1892.  This provision—which applied exclusively to residential construction projects that were homesteads—provided, in pertinent part, as follows:

> (a) To fix the lien on a homestead, the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement.
> (b) The contract must be executed before the material is furnished or the labor is performed.
> (c) If the owner is married, the contract must be signed by both spouses.
> (d) If the contract is made by an original contractor, the contract inures to the benefit of all persons who labor or furnish material for the original contractor.

---

[19] A "residential construction project" was statutorily defined as "...a project for the construction or repair of a new or existing residence, including improvements appurtenant to the residence, as provided by a residential construction contract." § 2, 1997 Tex. Gen. Laws 1881 (currently at TEX. PROP. CODE ANN. § 53.001(10)).  A "residence" was defined in the Act as
> ...a single-family house, duplex, triplex, or quadruplex or a unit in a multiunit structure used for residential purposes that is:
> (A) owned by one or more adult persons; and
> (B) used or intended to be used as a dwelling by one of the owners.

Id. (currently at TEX. PROP. CODE ANN. § 53.001(8)).

(e) the contract must be filed with the county clerk of the county in which the homestead is located. The county clerk shall record the contract in records kept for that purpose.[20]

§ 23, 1997 Tex. Gen. Laws 1887-88 (currently at TEX. PROP. CODE ANN. § 53.254).

The Act of 1997 also amended Section 53.052 of the Property Code to differentiate the lien affidavit filing requirement of residential construction projects from that of other projects. § 5, 1997 Tex. Gen. Laws 1881. An affidavit for a claim of a lien arising from a residential construction project had to be filed "with the county clerk of the county in which the property is located not later than the 15th day of the third calendar month after the day on which the indebtedness accrues."[21] Id. (currently at TEX. PROP. CODE ANN. § 53.052(b)). This requisite was effective only as to claims arising under contracts executed on or after September 1, 1997. §§ 5, 25, 1997 Tex. Gen. Laws 1881, 1892.

Since the adoption of the Texas Constitution in 1876, the only constitutional preconditions provided therein for establishing a lien on a homestead was that a written contract for the work performed and the material furnished be signed and acknowledged

---

[20] Section 53.254 also contained the following requirement that governed the contents of a lien affidavit filed in connection with a homestead:

> (f) An affidavit for a lien filed under this subchapter that relates to a homestead must contain the following notice conspicuously printed, stamped, or typed in a size equal to at least 10-point boldface or the computer equivalent, at the top of the page:
>
> "NOTICE: THIS IS NOT A LIEN. THIS IS ONLY AN AFFIDAVIT CLAIMING A LIEN."

§ 23, 1997 Tex. Gen. Laws 1888 (currently at TEX. PROP. CODE ANN. § 53.254(f)). This requisite was added by the Act of 1989. Act of June 14, 1989, 71st Leg., ch. 395, Sec. 1, 1989 Tex. Gen. Laws 1527.

[21] On all other projects it was to be recorded on or before the fifteenth day of the fourth calendar month after the date on which the claimant's indebtedness accrued. Id. (currently at TEX. PROP. CODE ANN. § 53.052(a)).

by the owner—and spouse, if married—before the work commenced.[22] TEX. CONST. of

1876, art. XVI, § 50(a)(5).  However, a 1997 constitutional amendment, effective January

1, 1998, imposed the following three additional requirements on all renovation and repair

work on existing improvements on a homestead as preconditions to a valid lien:  1) the

contract must not have been executed before the 12th day after the owner made written

application for any extension of credit for the work and material; 2) the contract must

have expressly provided that the owner may rescind the contract without penalty or

charge within three days after the execution of the contract by all parties; and 3) the

contract must have been executed by the owner and the owner's spouse only at the office

of a third-party lender making an extension of credit for the work and material, an

attorney at law, or a title company.[23]  TEX. CONST. art. XVI, § 50(a)(5)(A)-(D) (amended

1997).

The final revision to the corpus of mechanic's lien laws was another constitutional

amendment.  Effective January 1, 2002, Article 16, Section 50 of the Constitution was

amended to reduce the twelve day working period after signing the written application for

extension of credit to five days.  TEX. CONST. art. XVI, § 50(a)(5)(B) (amended 2001).

The 1997 and 2001 constitutional amendments and the provisions contained in the Act

of 1997, which are the current law today, shepherded in critical distinctions between an

---

[22] These requirements were necessary in the case of both a constitutional and a statutory lien. See
YOUNGBLOOD, supra §§ 502.1, 1002.2-1002.2(b)(3).  Moreover, neither of these liens could
be enforced against a homestead unless the requisites of Section 53.254 of the Property Code
were followed.  Id.

[23] These three added steps were not required where "…the work and material [were]…necessary
to complete immediate repairs to conditions on the homestead property that materially affect[ed]
the health and safety of the owner or person residing in the homestead and the owner of the
homestead acknowledge[d] this in writing."  TEX. CONST. art. XVI, § 50(a)(5)(A)-(D) (amended
1997).

original contractor's method of creating and perfecting a lien on a non-homestead

residential construction project, a residential homestead, and a business homestead.[24]

Under the present law, while all residential homesteads meet the Property Code definition

of a "residential construction project," not all residential construction projects constitute

homestead property.[25] YOUNGBLOOD, supra § 1002. With respect to non-homestead

residential construction projects, the constitutional and statutory homestead preconditions

necessary to create a valid constitutional lien are inapplicable. See TEX. CONST. art. XVI,

§ 50(a)(5); TEX. PROP. CODE ANN. § 53.254; YOUNGBLOOD, supra § 1002.1. Further, to

perfect a lien on a non-homestead residential construction project that would be

enforceable against third parties, an original contractor must file a lien affidavit (which

has the statutorily prescribed contents) with the county clerk of the county in which the

property is located within three months of the accrual of indebtedness and send a copy to

the owner at the owner's last known business or residential address on or before the

applicable sending deadline by certified mail. TEX. PROP. CODE ANN. §§ 53.052(b),

53.055(a); YOUNGBLOOD, supra § 1002.1.

---

[24] Though much of the discourse pertaining to the dissimilarities as to the proper procedures
necessary to create a mechanic's lien on non-homestead residential construction projects,
residential homesteads, and business homesteads is inapplicable to the case at bar, nevertheless,
in order to provide a complete analysis of the law and to prevent possible future confusion in a
different factual setting, this court will impart a brief synopsis of these differences.

[25] To claim a homestead exemption on real property, an owner must either actually occupy the
property as a home or, in the absence of actual occupancy, demonstrate an intent to reside thereon
as a home coupled with an overt act of preparation displaying that intention. Gilmore v.
Dennison, 131 Tex. 398, 400, 115 S.W.2d 902 (Tex. Comm'n App. 1938). The owner is entitled
to only one homestead at a time. Id. Applying these tenets, if an owner owns and resides in one
home situated on lot A as a homestead and is erecting another house on lot B while still
occupying the former, there is no homestead protection afforded to the house on lot B, regardless
of the owner's intent towards or use of the home thereon, until the owner permanently moves out
of the home on lot A. YOUNGBLOOD, supra § 1002. Lot B is nonetheless a residential
construction project. Id.

Concerning homestead property, the distinction between a business homestead and a residential homestead is an important one with respect to creating a valid constitutional lien, as a business homestead is not a residential construction project. See TEX. PROP. CODE ANN. §§ 53.001(8) & (10); YOUNGBLOOD, supra § 902.15. The constitutional requisites necessary to establish a lien upon a homestead are equally applicable to both residential and business homesteads. See TEX. CONST. art. XVI, § 50(a)(5); YOUNGBLOOD, supra § 502.1. However, Subchapter K of the Property Code (of which Section 53.254, the homestead provision, is a component)—effective as to claims under contracts executed on or after September 1, 1997, and which sets forth the statutory steps pertinent to liens on residential construction projects—is inapplicable to business homesteads. See TEX. PROP. CODE ANN. §§ 53.001(8)&(10), 53.251(a); YOUNGBLOOD, supra §§ 502.1, 902.15. The upshot of this inapplicability is that between an original contractor and an owner a lien could be enforceable against a business homestead without following the statutory homestead requirements of Section 53.254. YOUNGBLOOD, supra § 502.1. Thus, it is unnecessary for a written contract related to improvements on a business homestead to be recorded in order to create a valid lien. Id. To perfect a statutory lien on a business homestead enforceable against third parties, an original contractor—in addition to complying with the constitutional homestead formalities of Article 16, Section 50—must file a lien affidavit (which has the statutorily prescribed contents) with the county clerk of the county in which the property is located on or before the fifteenth day of the fourth calendar month after the date the claimant's indebtedness accrued and send a copy to the owner at the owner's last known business or residential

address on or before the applicable sending deadline by certified mail. TEX. PROP. CODE ANN. §§ 53.052(a), 53.055(a); YOUNGBLOOD, supra § 1000.

Further, the procedures an original contractor must satisfy to create a constitutional lien on residential homestead property also differ, depending upon whether the contractor provided work in connection to new improvements or repair or renovation work on existing improvements. If the work and material were for new construction, for a constitutional lien to arise thereon, the only constitutional requirement is that the contract be in writing.[26] TEX. CONST. art. XVI, § 50(a)(5); Spradlin v. Jim Walter Homes, Inc., 34 S.W.3d 578, 581 (Tex. 2000). The 1997 constitutional amendment dispensed with the acknowledgement requirement of the spouses' signature with regard to new construction, and this requirement does not appear in Section 53.254 of the Property Code. See TEX. CONST. art. XVI, § 50(a)(5) (amended 1997); TEX. PROP. CODE ANN. § 53.254. With respect to renovation or repair work, however, the Constitution necessitates that: 1) the work and material be contracted for in writing; 2) the contract be signed and acknowledged by the owner and spouse, if married, before the work commenced; 3) the contract not be executed by the owner before the 5th day after the owner made written application for any extension of credit for the work and material; 4) the contract expressly provide that the owner may rescind the contract without penalty or charge within three days after the execution of the contract by all parties; and 5) the contract be executed by the owner and the owner's spouse only at the office of a third-party lender making an

---

[26] This requirement is the same when a contractor performs work related to new improvements on a business homestead. See TEX. CONST. art. XVI, § 50(a)(5).

extension of credit for the work and material, an attorney at law, or a title company.[27]

TEX. CONST. art. XVI, § 50(a)(5)(A)-(D) (amended 1997 and 2001); Spradlin, 34 S.W.3d

at 581. Additionally, for both new improvements and renovation or repair work

performed on a residential homestead, Section 53.254 of the Property Code requires that

the contract set forth the terms of the agreement, that it be signed by the husband and

wife before the work commenced, and that it be recorded. TEX. PROP. CODE ANN. §

53.254(a)-(c), (e); YOUNGBLOOD, supra § 1002.2(a).

    To perfect a statutory lien on either new improvements or renovation or repair work

on existing improvements on residential homestead property that would be enforceable

against third parties, an original contractor must comply with both the constitutional and

statutory requirements set forth in the preceding paragraph. See YOUNGBLOOD, supra

§§1002.2-1002.2(b)(3). Additionally, a lien affidavit (which has the statutorily

prescribed contents) must be filed within three months of the accrual of indebtedness, and

a copy must be sent to the owner at the owner's last known business or residential

address on or before the applicable sending deadline by certified mail. TEX. PROP. CODE

ANN. §§53.052(b), 53.055(a); YOUNGBLOOD, supra § 1002.3.

## B. CURRENT STATUS OF THE LAW

    To summarize the foregoing discourse as to the law relevant to residential

homesteads—which is the type of property at issue in the present case—one and one-half

centuries of Texas mechanic's lien jurisprudence can be condensed as follows: there are

two types of mechanic's liens—the constitutional mechanic's lien and the statutory

---

[27] These requirements are the same for renovation and repair work performed on business
homesteads. See TEX. CONST. art. XVI, § 50(a)(5)(A)-(D).

mechanic's lien.[28]  See Strang, 35 S.W. at 1056; Apex Financial Corp., 7 S.W.3d 830;

Youngblood, Mechanics' and Materialmen's Liens in Texas, 26 Sw.L.J. 665.  The

mechanic's lien contemplated by the statutes is indistinguishable from the lien provided

for in the Constitution.  See Strang, 35 S.W. at 1056; Myers, 30 S.W. at 913;

YOUNGBLOOD, supra § 601.  In other words, all mechanic's liens have their source in

Article 16, Section 37 of the Constitution; this provision establishes the lien to which the

statutes refer.  Id.  The Court in Strang made this principle clear when it opined:

> [i]n the greater number of the states, mechanic's liens are created by
> statutes which usually express that the mechanic or materialman shall have
> a lien upon the land connected therewith…We conclude that the proper

---

[28]  It should be noted that another type of lien may be imposed upon a homestead: an express contract lien. Lippencott, 24 S.W. at 276. While this lien may be referred to as a mechanic's lien in a construction contract, a mechanic's lien should be distinguished, as it arises from a different source and in a different way. Id. A contract lien to secure repayment for the furnishing of labor and material for the construction of improvements is a mortgage lien and arises exclusively from the agreement of the parties. Id. at 282. A mechanic's lien arises by operation of law upon the commencement of work under a contract; it cannot be created by a contract. Myers v. Houston, 88 Tex. 126, 129, 30 S.W. 912, 913 (1895). A contract that grants an express lien may give rise to both an contract lien and, upon performance, a mechanic's lien. Mundine v. Berwin, 62 Tex. 341, 1884 WL 8918, at *2 (1884); Lippencott, 24 S.W. at 280-83. Thus, these two liens may coexist; having a contract lien does not preclude a mechanic's lien arising for the same work. Mundine v. Berwin, 62 Tex. 341, 1884 WL 8918, at *2; Lippencott, 24 S.W. at 280-83. A contract lien is valid on homestead property if the requirements of Article 16, Section 50 of the Constitution are satisfied. Interstate Bldg. & Loan Ass'n v. Goforth, 94 Tex. 259, 263-64, 59 S.W. 871, 873-74 (1900); Lippencott, 24 S.W. at 280-83. As between the parties to a contractually granted lien, the contract does not have to be recorded because the homestead formality requirements of the mechanic's lien statutes—unlike the homestead formality requirements of the Texas Constitution—are immaterial to the viability of a granted contract lien on the homestead. Interstate Building & Loan Ass'n, 59 S.W. at 873-74. If a contract concerning improvements on homestead property complies with the requirements of both the Constitution and those of Section 53.254(a)-(c) (e), a constitutional mechanic's lien arises by operation of law and secures the debt. Lippencott, 24 S.W. at 280-83. Unlike contractual liens, which may include a right to foreclose by non-judicial sale under an agreed power of sale, a constitutional or statutory mechanic's lien may be foreclosed only by judicial action. TEX. PROP. CODE ANN. § 53.154; CVN Group, Inc. v. Delgado, 95 S.W.3d 234, 247 (Tex. 2002); Lippencott, 24 S.W. at 281. Thus, a suit or arbitration proceeding must be brought to enforce a mechanic's lien. Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co., 849 S.W.2d 380, 390 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In the present case, the issue as to whether Munoz also possessed a contract lien is not properly before this court, as the Bankruptcy Court did not address this question and neither party raised it.

25

> construction of the language of the constitution of this state…gives to mechanics, artisans, and materialmen a lien upon the interest or estate that the person causing such building or improvements to be made thereon has in the land upon which they are situated…The lend does not depend upon improvements. The lien does not depend upon power to affix to that lien conditions of forfeiture. It may, under the constitution, provide means for enforcing the lien, and, in doing so, may prescribe such things to be done as may be deemed necessary for the protection of the owner or purchasers of such property,--a limitation upon the time for the enforcement of such lien, and such other things as pertain to the remedy…In so far as the statute gives to persons not embraced in the terms of the constitution, if it does so, a lien upon the buildings and lands on which they stand, the lien is dependent upon the statute, and a compliance therewith would be necessary in order to its existence. But, as between the contracting parties in this case, the lien attached under the constitution of the state, and was not lost by a failure to record the contract…as directed by the statutes.

Strang, 35 S.W. at 1056. Thus, when the statutes reference a mechanic's lien, they are referring to the very lien that springs from the Constitution, which is merely regulated by the statutes. Id.

While the source of a constitutional lien is Article 16, Section 37 of the Constitution, Article 16, Section 50 therein and Section 53.254 of the Texas Property Code provide the manner in which such a lien can be and is created on a residential homestead. See CVN Group, 95 S.W.3d at 235 & n. 5 (citing both Article 16, Section 37 and Section 50 of the Constitution when observing that an arbitrator had found that the contractor possessed a constitutional lien); see also Moray Corp. v. Griggs, 713 S.W.2d 753, 754 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd). As the court in Moray Corp. noted:

> [t]he Texas Constitution is very clear that a construction or improvement lien on a homestead is invalid unless created in a manner provided in section 50 of article 16. That section requires that the owner execute a contract with the builder. In this regard, the homestead provisions do override article 16, section 37, by requiring a written contract between the builder and the owner.

713 S.W.2d at 754 (citations omitted).  With respect to a residential homestead, whether the work thereon is for new improvements or repair or renovation work on existing improvements determines the requisites with which an original contractor must comply for a constitutional lien to arise.  A contractor who contracts with a property owner for new improvements must contract for same in writing.  TEX. CONST. art. XVI, § 50(a)(5) (amended 1997); Spradlin, 34 S.W.3d at 581.  Further, the contract must set forth the terms of the agreement, be signed by the owner and spouse, if married, before the work commences, and be recorded.  TEX. PROP. CODE ANN. § 53.254(a)-(c), (e).

An original contractor who contracts with an owner for renovations or repairs on existing improvements is the beneficiary of a constitutional mechanic's lien if the claimant complies with Article 16, Section 50 (a)(5)(A)-(D) of the Constitution and Section 53.254(a)-(c), (e) of the Property Code.  TEX. CONST. art. XVI, § 50(a)(5)(A)-(D) (amended 1997); TEX. PROP. CODE ANN. § 53.254(a)-(c), (e); Spradlin, 34 S.W.3d at 581.  As a constitutional lien is not enforceable against bona fide good faith purchasers for value or encumbrancers without actual notice, a contractor would be wise to file a lien affidavit to perfect a statutory mechanic's lien, thus giving constructive notice.  Strang, 35 S.W. at 1056; Farmers' & Mechanics' Nat. Bank, 40 S.W. at 880; Wood, 420 S.W.2d at 429; Apex Financial Corp., 7 S.W.3d at 830.

## IV.  APPLICATION OF THE LAW TO THE CURRENT CASE

Turning to the instant case, the foregoing survey of constitutional and statutory law pertaining to mechanics' liens compels this court to find that Munoz possesses a constitutional lien enforceable against the Cavazos' homestead.  As Munoz renovated existing improvements thereon, Article 16, Section 50(a)(5)(A)-(D) and Section

53.254(a)-(c), (e) control, and it is to these provisions that this court looks in rendering its decision. As detailed above, the Constitution requires that the contract 1) be in writing; 2) be signed and acknowledged by the Cavazos before commencement of the work; 3) not be executed before the 12th day after the Cavazos made written application for any extension of credit for the work and material; 4) provide that the Cavazos could rescind same without penalty or charge within three days of execution; and 5) be signed by the Cavazos only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company.[29] TEX. CONST. art. XVI, § 50(a)(5)(A)-(D) (amended 1997). Section 53.254 of the Property Code further requires that the written contract set forth the terms of the agreement, be signed by both spouses and executed before the work or material were furnished, and be filed with the county clerk in the county in which the homestead property is located. TEX. PROP. CODE ANN. § 53.254(a)-(c), (e).

Munoz and the Cavazos signed a written, acknowledged contract setting forth the terms of the agreement at the office of the Rio Grande Valley Abstract Company, Inc. on March 10, 1999, and recordation of same occurred on or about March 16, 1999. Execution of the contract occurred more than twelve days after the Cavazos applied for a mortgage (the Rio Grand Mortgage Company approved the mortgage in September 1998) and before material was furnished or labor was performed. The contract also provided that the Cavazos could rescind the agreement without penalty or charge within three days

---

[29] As the contract was executed in 1999, the constitutional amendment, effective January 1, 2002, reducing the twelve-day working period after signing the written application for extension of credit to five days is inapplicable. See TEX. CONST. art. XVI, § 50(a)(5)(B) (amended 2001).

of execution.  Thus, Munoz satisfied all the requirements necessary to possess a constitutional lien.

Consequently, having found that Munoz complied with all the necessary steps for a constitutional lien, this court further holds that the Bankruptcy Court erroneously found Munoz's lien to be invalid on the ground that he failed to file a lien affidavit pursuant to Section 53.052(b) of the Property Code.  The recordation of an affidavit is necessary only if Munoz was attempting to render the lien effective as to a third party without actual notice.  Strang, 35 S.W. at 1056 (constitutional lien is unenforceable against subsequent good faith purchasers of a property or lenders taking a security interest thereon who acquire the interest without actual or constructive notice of the lien claim); Wood, 420 S.W. at 429; Apex Financial Corp., 7 S.W.3d at 830; YOUNGBLOOD, supra § 1000.  Munoz, however, contracted directly with the Cavazos, the owners of the property.  A constitutional lien may be asserted by one in privity with the owner of the property in question for renovations to existing improvements on a homestead if the prescriptions in Article 16, Section 50(a)(5)(A)-(D) and Section 53.254(a)-(c), (e) of the Property Code are followed.  Strang, 35 S.W. at 1056; Herrington, 491 S.W.2d at 480-81; Gilmer v. Wells, 17 Tex. Civ. App. 436, 439, 43 S.W. 1058, 1060 (Tex. Civ. App. 1897, writ ref'd).  Said lien's viability is not subject to compliance with the lien perfection requirement of Section 53.052(b).  Strang, 35 S.W. at 1056.

The Bankruptcy Court relied upon CVN Group, Inc. v. Delgado, 47 S.W.3d 157 (Tex. App.—Austin 2001), rev'd on other grounds, 95 S.W.3d 234 (Tex. 2002) in support of its holding.  Such reliance, however, was misplaced.  In CVN Group, the owners of a homestead employed a contractor to construct a new residence on their property;

however, before construction was completed, the owners ordered the work to cease. Id. at 160. The contractor alleged that the homeowners breached the contract, and as the contract contained an arbitration clause, the parties submitted their dispute to an arbitrator, who ultimately found that the contractor possessed both valid statutory and constitutional mechanic's liens. Id.

The contactor brought an action to confirm the arbitration award and foreclose the lien. Id. The trial court, however, declared the lien invalid and denied foreclosure. Id. at 167. Specifically, the Court found that the evidence failed to demonstrate that the contractor had properly filed an acknowledged lien contract. Id. at 166. The contractor appealed, and the Austin Court of Appeals affirmed the trial court's decision, reasoning that the protection afforded homesteads constituted a fundamental public policy and that to safeguard a homestead a court must review an arbitrator's decision concerning the validity of a lien before granting or denying foreclosure.[30] Id. at 164-67.

The issue before the Austin Court in CVN Group was whether an arbitrator could determine the validity of a lien on a homestead or whether a court must make the determination before foreclosure could be ordered. As mentioned above, the arbitrator

_____

[30] The Supreme Court of Texas granted a petition for review and reversed the Court of Appeals. CVN Group, 95 S.W.3d at 234. Because the Court issued its opinion subsequent to the Bankruptcy Court's ruling, the Bankruptcy Court in this case did not have the benefit of that opinion. The Supreme Court concluded that an arbitration award could not be set aside on public policy grounds unless there were extraordinary circumstances that clearly violated an articulated, fundamental policy. Id. at 239. The Court found no such circumstances present, as the arbitration award did not contravene the protections provided a homestead in the Texas Constitution and Property Code. Id. The Court noted that, although the homeowners argued that the contractor failed to satisfy two requirements for perfecting its liens, the contractor disputed this claim and both parties submitted evidence and briefs to the arbitrator. Id. The Court opined that a decision by an arbitrator that differed from how a judge would have decided the issue did not constitute a violation of public policy. Id. The Court determined that nothing in the arbitration proceeding indicated that the arbitrator disregarded the requirements for perfecting a mechanic's lien. Id.

had found that the contractor had possessed both a constitutional and a statutory lien, and it is within this context that the Austin Court reiterated and evaluated the findings of the arbitrator and the trial court. Unfortunately, as is all too typical of the case law surrounding mechanics' liens, the Austin Court was not as clear or specific in its construction of the applicable constitutional and statutory law as it could have been and neglected to distinguish between the two kinds of liens when it reviewed the evidence offered in support of each. It is this lack of clarity and the unavailability of the Supreme Court's decision that no doubt induced the improper conclusion advanced by the Bankruptcy Court in the present case (i.e., that the contractor, Munoz, needed to file a lien affidavit to create an enforceable lien).

The Austin Court explicitly stated—and correctly so—that Article 16, Section 50 of the Constitution and Section 53.254(a)-(c), (e) of the Property Code prescribe the required constitutional and statutory procedures that an original contractor in direct privity with an owner of a homestead must follow before a lien can attach against the property.[31] Id. at 164-65. The Court, however, failed to mention that it is a constitutional lien that is created upon compliance with these provisions. Applying the aforementioned requirements, the Court concluded that the proof of the necessary contract in the record before it was inadequate and held that the trial court did not abuse its discretion in refusing to find a lien arose against the property.[32] Id. at 166.

---

[31] Because the homeowners hired the contractor to construct a new residence on their property, the contractor needed to have only a written contract under the Constitution. Id. at 164.

[32] The Austin Court observed that at the trial court hearing the parties concentrated on whether a contract had been acknowledged and filed with the county clerk in the county in which the property was located pursuant to Section 53.254(e). Id. at 165. Because the documents-only arbitration record did not contain a copy of the contract, the trial court determined that the evidence failed to show that this instrument was filed. Id. at 165-66. The Austin Court searched

31

The Court then ruled that the lien affidavit filed by the contractor was insufficient because it was not filed with the county clerk by the fifteenth day of the third calendar month after the day on which the indebtedness accrued in accordance with Section 53.052(b) of the Property Code. Id. It is this consideration of the affidavit, which pertains to a statutory lien, that probably compelled the Bankruptcy Court's reasoning and ultimate decision in the present case. It never mentioned the context within which it reviewed the affidavit. In other words, the Court never pointed out that the lien affidavit was pertinent to the question of whether the contractor possessed a valid statutory lien. Nevertheless, as made clear by this court's review of the mechanic's lien history, the filing of the lien affidavit is *sine qua non* only when a claimant is attempting to perfect a statutory lien on a homestead, not when a constitutional lien is being asserted.[33]  See Strang, 35 S.W. at 1056; Farmers' & Mechanics' Nat. Bank, 40 S.W. at 880; see also YOUNGBLOOD, supra § 1000. The failure of an original contractor to file a lien affidavit prior to the expiration of the applicable deadline will result in a loss of all the claimant's statutory mechanic's lien rights arising from work under the contract, not the rights arising from a perfected constitutional lien. Id.

---

the trial court record and also failed to locate said document. Id. at 166. Though the contractor produced a copy in its appellate reply brief, the Court concluded that it was not part of the record, as it was required to determine the case on the record as filed. Id.

[33] This court does find it somewhat curious that the Austin Court even addressed the lien affidavit. It is well-settled that neither a constitutional lien nor a statutory mechanic's lien may be enforced against a homestead unless a written contract for the work and material to be supplied is signed by all owners prior to the work commencing and is recorded. TEX. CONST. art. XVI, § 50(a)(5); TEX. PROP. CODE ANN. § 53.254(a); see also Lyon v. Ozee, 66 Tex. 95, 97, 17 S.W. 405 (1886); Kepley v. Zachry, 131 Tex. 554, 559, 116 S.W.2d 699, 701-02 (Tex. Comm'n App. 1938); Guaranty Const. Co. v. Atwood, 43 S.W.2d 159, 163 (Tex. Civ. App.—Amarillo 1931), rev'd, 63 S.W.2d 685 (Tex. Comm'n App. 1933, judgm't adopted). The Austin Court's finding that there was no contract in the record obviated the need to determine the adequacy of the affidavit.

32

This court's reading of the Austin Court of Appeals' decision in <u>CVN Group</u> is bolstered by an unpublished opinion authored by the First Court of Appeals that similarly construed <u>CVN Group</u>.  See <u>Fraser v. Baybrook Bldg. Co., Inc.</u>, No. 01-02-00290-CV, 2003 WL 21357316 (Tex.App.—Houston [1st Dist] June 12, 2003, pet. denied) (not designated for publication).  In <u>Fraser</u>, the Court cited <u>CVN Group</u> for the proposition that a contractor may secure a valid mechanic's lien against a homestead on which work was performed if the constitutional and statutory procedures set forth in Article 16, Section 50 of the Constitution and Section 53.254 of the Property Code are followed.  <u>Id.</u> at *3.  Any other construction of <u>CVN Group</u> would be inconsistent with the case law that has addressed this issue over the last 128 years.  See e.g., <u>In re Daves</u>, 770 F.2d at 1366 (holding that a "constructive trust may not be judicially imposed to secure a lien against Texas homestead property when the constitutional and statutory requirements [i.e., Article 16, Section 50 and Tex. Rev. Civ. Stat. art 5460, a predecessor statute to Section 53.254] for fixing such a lien have not been met."); <u>Lyon</u>, 17 S.W. at 405 (holding that a lien is not enforceable against a homestead without compliance with the requirements set forth in Article 16, Section 50 and Tex. Rev. Civ. Stat. art. 3174, a predecessor provision of Section 53.254); <u>Collier v. Valley Building & Loan Ass'n</u>, 62 S.W.2d 82, 84 (Tex. Comm'n App. 1933, holding approved) (holding same when construing Article 16, Section 50 and Tex. Rev. Civ. Stat. art. 5460); <u>Herrington</u>, 491 S.W.2d at 480-82 (holding that an original contractor's self-executing constitutional lien arising from his contract for homestead improvements upon satisfying the constitutional and statutory requisites [i.e., Article 16, Section 50 and Tex. Rev. Civ. Stat. art 5460] did not inure to the subcontractor because the subcontractor neither filed a lien affidavit nor

33

gave notice of his claim within the applicable time prescribed by the statutes); Schmoker v. Waelder, 115 S.W.2d 1134, 1135-36 (Tex. Civ. App.—Amarillo 1938)(holding same as Lyon).

## V. CONCLUSION

Accordingly, based upon the foregoing discussion, this court reverses the decision of the Bankruptcy Court and finds that a constitutional mechanic's lien exists in favor of Munoz. Article 16, Section 50(a)(5)(A)-(D) of the Texas Constitution and Section 53.254(a)-(c), (e) of the Property Code together prescribe the specific requirements necessary for an enforceable constitutional mechanic's lien to arise from a debt for labor and material furnished for renovation or repair of existing improvements on residential homestead property. Munoz has fulfilled these requirements and is thus entitled to whatever consideration that lien affords him. This case is remanded back to the Bankruptcy Court for further proceedings not inconsistent with this opinion.

Signed in Brownsville, Texas, this 12th of February, 2004.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE